Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| MARÍA A. ALICEA LÓPEZ<br><br>Recurrida<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente | TA2025RA00046 | REVISIÓN JUDICIAL Procedente de la Comisión Industrial de Puerto Rico<br><br>CI Núm.: 18-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-03 Caso<br><br>CFSE Núm.: 18-34-02940<br><br>Sobre: Tratamiento e Incapacidad y Relación Causal |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard y la jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece ante nos la Corporación del Fondo del Seguro del Estado ("CFSE" o "Recurrente") mediante *Recurso de Revisión* presentado el 3 de junio de 2025. Nos solicita la revocación de la *Resolución en Reconsideración* emitida el 11 de junio de 2025 y notificada el 13 de junio del mismo año, por la Comisión Industrial de Puerto Rico ("Comisión Industrial" o "agencia recurrida"). Mediante el referido dictamen, la Comisión Industrial concluyó que tenía jurisdicción sobre la condición de síndrome de túnel carpal bilateral diagnosticada a la señora María Alicea López ("señora Alicea López" o "Recurrida").

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen recurrido.

## I.

Surge del expediente ante nuestra consideración que, el 28 de julio de 2017, se presentó un *Informe Patronal.*[1] De este

---

[1] Véase, SUMAC TA, Entrada1, Exhibit III.

documento se desprende que la señora Alicea López, quien se desempeña como secretaria en el Tribunal de Caguas, sufrió una caída en las escaleras del estacionamiento de empleados de su lugar de trabajo. En esa línea, del *Informe Patronal* se desprende la siguiente manifestación por parte de la Recurrida: "[e]staba subiendo la escalera del estacionamiento de empleados del Tribunal de Caguas y me caí. Me agarré de la baranda con la mano **derecha** y sufrí una torcedura de la mano **derecha**".[2] Además, la señora Alicea López expuso en el aludido informe lo siguiente: "[s]ufrí laceración en el dedo del pie derecho. Me duele el pie hasta la rodilla. Siento un dolor en la rodilla".[3]

Subsiguientemente, el 31 de julio de 2017, notificada el 1 de agosto de 2017, la CFSE emitió *Decisión del Administrador sobre Tratamiento Médico*.[4] De dicho documento se desprende que, la señora Alicea López fue examinada el 28 de julio del mismo año y se determinó el siguiente tratamiento médico:

> Descanso hasta el día: 4 de agosto de 2017 y se comenzará tratamiento médico en CT (mientras trabaja) el día: 5 de agosto de 2017 por la(s) condición(es) 883.1: Heridas en dedos complicadas, 1er dedo pie derecho, Orgánica, Primaria, Relacionado.[5]

Así pues, de los autos surge que la Recurrida recibió tratamiento médico adicional.[6] Ulteriormente, el 1 de marzo de 2018, la CFSE, emitió y notificó *Decisión del Administrador sobre Tratamiento Médico*.[7] Al amparo de este documento, la Recurrente dispuso:

> El lesionado (a) fue examinado el día, **1 de marzo de 2018**, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:
>
> **CT (mientras trabaja) por la(s) condición(es)**: 846.0: Esguince lumbosacral (Lumbosacral strain o sprain),

---

[2] Véase, SUMAC TA, Entrada1, Exhibit III.
[3] Véase, SUMAC TA, Entrada1, Exhibit III.
[4] Véase, SUMAC TA, Entrada1, Exhibit II.
[5] Véase, SUMAC TA, Entrada1, Exhibit II.
[6] Véase, SUMAC TA, Entrada1, Exhibit IV (a)-(g).
[7] Véase, SUMAC TA, Entrada1, Exhibit V.

Orgánica, Primaria, Relacionado; 842.0: Esguinces (Sprain, strain) de la muñeca, derecha, Orgánica, Primaria, Relacionado; 883.1: Heridas en dedos complicadas, 1er dedo pie derecho, Orgánica, Primaria, Relacionado; 847.1: Esguince dorsal (Dorsal strain o sprain), Orgánica, Primaria, Pendiente; 923.3: Contuciones de los dedos, dedo pie derecho 1er, Orgánica, Primaria, Relacionado; 924.11: Contusión de la rodilla, derecha, Orgánica, Primaria, Relacionado.[8]

Posteriormente, el 15 de junio de 2018, la CFSE emitió *Decisión del Administrador sobre Tratamiento Médico.*[9] Por virtud de esta, la Recurrente le otorgó el alta definitiva a la señora Alicea López. Como corolario de lo anterior, en cuanto a las condiciones evaluadas, la CFSE dispuso lo siguiente:

**Sin incapacidad**

846.0: Esguince lumbosacral (Lumbosacral strain o sprain), Orgánica, Primaria, Relacionado; 923.3: Contusiones de los dedos, dedo pie derecho 1er, Orgánica, Primaria, Relacionado; 842.0: Esguinces (Sprain, strain) de la muñeca, derecha, Orgánica, Primaria, Relacionado; 924.11: Contusión de la rodilla, derecha, Orgánica Primaria, Relacionado; 883.1: Heridas en dedos complicadas, 1er dedo pie derecho, Orgánica, Primaria, Relacionado.

**Con Incapacidad**

847.1: Esguince dorsal (Dorsal strain o sprain), Orgánica, Primaria, Relacionado.[10]

Inconforme con la determinación de la CFSE, el 13 de julio de 2018, la Recurrida presentó *Escrito de Apelación* ante la Comisión Industrial.[11] Mediante su escrito, la señora Alicea López expresó discrepar con la decisión de la CFSE emitida el 15 de julio de 2018. Puntualizó que continuaba sintiendo dolor y expuso que requería más tratamiento. Por su parte, el 18 de julio de 2018, la CFSE notificó *Decisión del Administrador sobre Incapacidad Parcial Permanente.*[12] Al amparo del aludido dictamen, la Recurrente reiteró concederle el alta definitiva a la Recurrida con una incapacidad primaria de cinco porciento (5%) "por perdida de las

---

[8] Véase, SUMAC TA, Entrada1, Exhibit V.
[9] Véase, SUMAC TA, Entrada1, Exhibit VI.
[10] Véase, SUMAC TA, Entrada1, Exhibit VI.
[11] Véase, SUMAC TA, Entrada1, Exhibit VII.
[12] Véase, SUMAC TA, Entrada1, Exhibit VIII.

funciones fisiológicas generales por esguince dorsal".[13] Además, la CFSE le concedió una compensación a la señora Alicea López de mil cuatrocientos sesenta y dos dólares con cincuenta centavos ($1,462.50).

Insatisfecha con esta determinación, el 2 de agosto de 2018, la señora Alicea López presentó *Apelación* ante la Comisión Industrial.[14] Esbozó que no estaba de acuerdo con la determinación de la CFSE emitida el 11 de julio de 2018, por lo que solicitó la revisión de dicho dictamen. En sintonía con lo anterior, requirió "tratamiento e incapacidad y que se relacione las condiciones no relacionadas en la decisión o lo que proceda en derecho de acuerdo con la decisión apelada".[15]

Evaluados los escritos ante su consideración, el 28 de febrero de 2019, notificada el 21 de marzo ese año, la Comisión Industrial emitió *Resolución*.[16] Mediante este dictamen, la agencia recurrida reseñó que el 13 de febrero de 2019, se llevó a cabo una vista médica en la que compareció la Recurrida junto a su representación legal, el médico asesor de la CFSE y el médico asesor de la Comisión Industrial. Tras examinar la prueba desfilada en la referida vista, la Comisión Industrial determinó lo siguiente:

> OTORGAR a la parte apelante una incapacidad de un cinco por ciento (5%) de las funciones fisiológicas por esguince muñeca derecha por residual de movimiento y dolor. Se ordena que por el Administrador se haga efectivo a la parte apelante el pago de la compensación correspondiente en la forma que dispone la Ley.

> OTORGAR a la parte apelante una incapacidad de un cinco por ciento (5%) de las funciones fisiológicas por pérdida del dedo grande de un pie por la segunda articulación, Codificación 165. Se ordena que por el Administrador se haga efectivo a la parte apelante el pago el pago de la compensación correspondiente en la forma que dispone la Ley.

---

[13] Véase, SUMAC TA, Entrada1, Exhibit VII.
[14] Véase, SUMAC TA, Entrada1, Exhibit X.
[15] Véase, SUMAC TA, Entrada1, Exhibit X.
[16] Véase, SUMAC TA, Entrada1, Exhibit XI.

[…]

CONFIRMAR la decisión del Administrador de la Corporación del Fondo del Seguro del Estado del 15 de junio de 2018, en cuanto a la rodilla derecha, área dorsal y área lumbar. [17]

Insatisfecha aun, el 27 de marzo de 2019, la Recurrida solicitó una vista pública sobre su caso.[18] Así las cosas, el 18 de septiembre de 2019, notificada el 3 de octubre de 2019, la Comisión Industrial emitió *Resolución*,[19] en la que destacó que el 20 de agosto de 2019 se llevó a cabo vista pública en la que compareció la Recurrida junto a su representación legal, el administrador y perito médico de la CFSE y el asesor médico de la Comisión Industrial. Se desprende además de la *Resolución* que, en el presente caso, los médicos evaluaron a la señora Alicea López y emitieron varias recomendaciones. Cónsono con estas recomendaciones, la Comisión Industrial determinó lo siguiente:

CONFIRMAR la decisión del Administrador de la Corporación del Fondo del Seguro del Estado notificada el 18 de julio de 2018, en cuanto a la condición dorsal. ORDENAR el cierre y archivo del presente recurso apelativo.

CONFIRMAR la decisión del Administrador de la Corporación del Fondo del Seguro del Estado notificada el 15 de junio de 2018, en cuanto a la condición lumbar. ORDENAR el cierre y archivo del presente recurso apelativo.

DEVOLVER el caso a la jurisdicción del Administrador de la Corporación del Fondo del Seguro del Estado, para que la parte apelante sea referida al Ortopeda Asesor, para evaluación por la contusión de rodilla derecha y contusión dedo del pie derecho (1er dedo) y se actúe a tenor con los hallazgos médicos.

DEVOLVER el caso a la jurisdicción del Administrador de la Corporación del Fondo del Seguro del Estado para que se le practique a la parte apelante estudio de NCV de las extremidades superiores derecha, si no está contraindicado y se actúe a tenor con los hallazgos médicos. Posteriormente emitirá la decisión que en derecho corresponda.[20]

Transcurrido varios trámites procesales, el 4 de enero de 2022, notificada el 19 de enero de 2022, la CFSE, emitió *Decisión*

---

[17] Véase, SUMAC TA, Entrada1, Exhibit XI.
[18] Véase, SUMAC TA, Entrada1, Exhibit XII.
[19] Véase, SUMAC TA, Entrada1, Exhibit XIII.
[20] Véase, SUMAC TA, Entrada1, Exhibit XIII.

*del Administrador sobre Tratamiento Médico.*[21]   Mediante esta, la

CFSE dispuso que la Comisión Industrial devolvió el caso y tras la

Recurrente revaluarlo, determinó lo siguiente:

> **Darle de alta:**
>
> **Confirmando la decisión del: <u>15 de junio de 2018</u> para la(s) condición(es):** 923.3: Contusiones de los dedos, dedo pie derecho 1er, Orgánica, Primaria, Relacionado; 842.0: Esguinces (Sprain, strain) de la muñeca, derecha, Orgánica, Primaria, Relacionado; 842.0: Esguinces (Sprain, strain) de la muñeca, derecha, Orgánica, Primaria, Relacionado; 924.11: Contusión de la rodilla, derecha, Orgánica Primaria, Relacionado; 924.11: Contusión de la rodilla, derecha, Orgánica Primaria, Relacionado.[22]

Inconforme, el 25 de enero de 2022, la Recurrida presentó

*Apelación a Vista Médica* ante la Comisión Industrial.[23] Mediante

esta, impugnó la determinación de alta notificada por la CFSE y

solictó una vista médica.

Ulteriormente, el 17 de septiembre de 2024, notificada el 7

de octubre de 2024, la Comisión Industrial emitió *Resolución.*[24] Al

amparo de este dictamen la agencia recurrida dispuso:

> ORDENAR a la Secretaría de este Organismo referir a la parte apelante al CIRUJANO GENERAL Consultor para evaluación y recomendaciones sobre tratamiento o mayor incapacidad en cuanto a la condición esguince mano derecha y relación causal posterior Vista Pública en cuanto a la condición de síndrome del túnel carpal derecho severo.
>
> Una vez recibido el informe evaluativo, SE ORDENA a nuestra Secretaría señalar Vista Pública, debiéndose citar al médico especialista.[25]

Tiempo después, el 1 de abril de 2025, notificada el 30 de

abril de 2025, la Comisión Industrial emitió *Resolución.*[26] En lo

pertinente, la agencia recurrida determinó asumir jurisdicción

sobre la condición de síndrome de túnel carpal bilateral y

determinó que la mencionada condición guarda un nexo causal

con el trabajo de la Recurrida. En vista de lo anterior, ordenó a la

---

[21] Véase, SUMAC TA, Entrada1, Exhibit XIV.
[22] Véase, SUMAC TA, Entrada1, Exhibit XIV.
[23] Véase, SUMAC TA, Entrada1, Exhibit XV.
[24] Véase, SUMAC TA, Entrada1, Exhibit XVII.
[25] Véase, SUMAC TA, Entrada1, Exhibit XVII.
[26] Véase, SUMAC TA, Entrada1, Exhibit XIX.

CFSE a brindarle a la señora Alicea López "la íntegra protección dispuesta en la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como Ley de Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA § 1 et seq".[27]

Vale destacar que la aludida determinación fue anejada al adjuntó el *Informe* del Oficial Examinador que presidió la vista pública llevada a cabo el 10 de marzo de 2025.[28] Conforme surge del referido Informe, el cirujano general evaluó a la señora Alicea López y la diagnosticó con la condición del túnel carpal en ambas manos. El *Informe* también recogió la objeción de la CFSE sobre la inclusión de la mano izquierda en el análisis, o ya que el *Informe Patronal* el cual originó el caso ante la CFSE, no consta reclamación alguna sobre esa mano, por lo que impugnó la jurisdicción de la Comisión Industrial para considerar el asunto.

En desacuerdo con el dictamen de la agencia recurrida, el 15 de mayo de 2025, la CFSE presentó *Reconsideración.*[29] Argumentó que la *Resolución* emitida por la Comisión Industrial carecía de determinaciones de hechos y conclusiones de derecho por lo que violentó el debido proceso de ley de la Recurrente para impugnar adecuadamente la decisión.

Examinado el escrito del Recurrente, el 22 de mayo de 2025, notificada al día siguiente, la Comisión Industrial emitió *Notificación Acogiendo Moción para Reconsideración y Orden.*[30] Ulteriormente, el 11 de junio de 2025, notificada el 13 del mismo mes y año, la Comisión Industrial emitió *Resolución en Reconsideración.*[31] Mediante esta la agencia recurrida formuló las siguientes determinaciones de hechos:

---

[27] Véase, SUMAC TA, Entrada1, Exhibit XIX.
[28] Véase, SUMAC TA, Entrada1, Exhibit XIX.
[29] Véase, SUMAC TA, Entrada1, Exhibit XX.
[30] Véase, SUMAC TA, Entrada1, Exhibit XXI.
[31] Véase, SUMAC TA, Entrada1, Exhibit XXII.

1. El 20 de julio de 2017, la señora María A. Alicea López (la obrera) presentó reclamación ante el Fondo del Seguro del Estado (FSE) mientras realizaba labores de secretaria para el patrono, Tribunal de Justicia. Reporta como accidente laboral una caída mientras caminaba al estacionamiento de empleados. Incluso, se "agarró de una baranda con la mano derecha y sufrió una torcedura de la mano derecha."

2. Inicialmente, los diagnósticos reconocidos fueron de esguince de mano derecha, contusión de rodilla derecha, herida dedo pie derecho, esguince lumbar y espasmo dorsal.

3. En la vista pública del 20 de agosto de 2019, surge que la obrera recibió evaluación por fisiatra y tratamiento de terapia física para las condiciones dorsal y lumbar; mas no de la mano derecha. Se otorga a la parte apelante una incapacidad parcial permanente equivalente a la pérdida de un cinco por ciento (5%) de las funciones fisiológicas mano por muñeca por la condición de esguince de muñeca derecha.

4. En la vista pública del 20 de agosto de 2019, se devuelve el caso a la jurisdicción del Administrador de la Corporación del Fondo del Seguro del Estado para que se le practicara a la parte apelante estudio de NCV de extremidad superior derecha. Posteriormente, emitiría la decisión que en derecho corresponda.

5. En la vista médica del 24 de marzo de 2022, surge que el FSE realizó estudio pero que no había recibido evaluación de Cirujano de Manos del FSE.

6. En la vista médica del 16 de septiembre de 2024, surge que el estudio de velocidad de conducción nerviosa el 24 de mayo de 2021, reflejó la condición de síndrome de túnel carpal derecho severo. Aun sin decisión del FSE, se determinó referir a la parte apelante al cirujano consultor, para evaluación y recomendaciones sobre tratamiento y mayor incapacidad de la condición de esguince de mano derecha, y sobre relación causal de la condición de síndrome de túnel carpal derecho.

7. El Dr. Peter Psarras Castro, cirujano consultor evaluó a la obrera el 18 de enero de 2025, y rindió informe. Señala que la obrera presenta quejas de dolor de ambas muñecas. No tiene fuerza en las manos (más en la derecha). Menciona en el historial de trabajo que la obrera lleva 24 años ejerciendo labores de secretaria. Describe que las labores incluyen escribir, uso de computadoras y manejo de expedientes.

8. Al examen físico destacó que la obrera presentó dolor a la palpitación en la muñeca derecha. Sin atrofia en las manos. Prueba de reflexión negativa. Tinel cubital negativo. Tinel mediano carpal positivo. Phalen mediano carpal bilateral positivo. Fuerza disminuida en las manos (más en la derecha). Movimientos disminuidos en la muñeca

derecha. Movimientos disminuidos en la flexi[ó]n de las falanges de la mano derecha. Su impresión diagnóstica fue de síndrome de túnel carpal bilateral (más en la derecha) [.]

9. En la vista pública celebrada el 10 de marzo de 2025, cuya resolución se revisa, el cirujano consultor señaló que esta lesionada se reportó porque se lastimó la mano derecha en un accidente de trabajo. Por esa razón, el estudio se practicó de la extremidad derecha solamente. Al momento que la vio, entendió que presentaba un síndrome de túnel carpal en ambas manos. Tanto el accidente que tuvo en la mano derecha como las labores pudieron ser factores o haber incidido en esta condición. Por lo tanto, la recomendación es que se relacione el síndrome de túnel carpal.

10. A preguntas del Lic. Ricardo Álamo, el Dr. Peter Psarras respondió que como parte del examen, en término de las manos, evalúa las dos, porque puede haber diferencia entre una y la otra que se importante mencionar. Aunque se la envíen para esa mano, evalúa las dos, a menos que la persona tenga cirugía reciente en una de las manos y no se puede hacer maniobras. El aspecto de la mano izquierda es un ejercicio que hace por un análisis y preferencia de su proceso evaluativo.

11. La Dra. Ivette Ríos estuvo de acuerdo con el doctor Parras.

12. La LIc. Carmen Fernández solicitó que se asuma jurisdicción por la condición de la mano izquierda y se devuelva al FSE para tratamiento.

13. El Lic. Ricardo Álamo señaló que en este caso la jurisdicción está para el aspecto de la mano derecha. Este Foro no tiene jurisdicción para atender la mano izquierda. El Fondo no tuvo la oportunidad de evaluar. El informe patronal indica que esta lesionada tiene una condición de mano derecha.

14. El Oficial Examinador indicó que este Foro tiene la facultad en ley para asumir jurisdicción sobre los asuntos que el Fondo tuvo oportunidad de evaluar y no evaluó.[32]

Cónsono con estas determinaciones de hecho, la Comisión Industrial reiteró su determinación de asumir la jurisdicción sobre la condición túnel carpal bilateral de la Recurrida y ordenar tratamiento. Como corolario de ello, relacionó la referida condición con el accidente sufrido y reportado por la señora Alicea López. Ante esto, destacó que la Recurrida llevaba quince (15) años ejerciendo funciones de secretaria al momento del accidente y que

---

[32] Véase, SUMAC TA, Entrada1, Exhibit XXII.

en ese momento no se le practicó una evaluación más abarcadora de la condición. Por consiguiente, subrayó que no fue hasta el año 2025 que la señora Alicea López recibió evaluación adecuada por la condición de la mano accidentada y, por ende, a la fecha de la evaluación se reportaron síntomas en ambas manos. Por los fundamentos previamente esbozados, declaró *No Ha Lugar* la *Moción de Reconsideración* instada por la CFSE y ordenó el cierre y archivo del recurso.

Inconforme con esta decisión, el 3 de julio de 2025, la CFSE presentó el recurso de epígrafe mediante la cual formuló los siguientes señalamientos de error:

> Erró la Honorable Comisión Industrial al determinar asumir jurisdicción sobre la condición y/o diagnóstico de Síndrome de Túnel Carpal (CTS) Izquierdo, condición no alegada, ni reclamada por la parte obrera ante la CFSE.
>
> Erró la Honorable Comisión Industrial al determinar que la condición de Síndrome de Túnel Carpal (CTS) Izquierdo está relacionada al accidente reclamado por la lesionada ante la CFSE.
>
> Erró la Honorable Comisión Industrial al descansar en los hallazgos clínicos de una evaluación realizada más de siete (7) años y seis (6) meses desde la ocurrencia del accidente reclamado por la parte obrera ante la CFSE.

El 10 de julio de 2025 esta Curia emitió *Resolución*, en la que se le concedió hasta el 4 de agosto de 2025 a la Recurrida para presentar la oposición al recurso instado. Ante la incomparecencia de la señora Alicea López, el 6 de agosto de 2025, esta Curia emitió *Resolución* mediante la cual se le extendió un término adicional e improrrogable de tres (3) días a la Recurrida para que presentara su oposición. Vencido dicho término y por no haber comparecido la parte recurrida, procederemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración, sin el beneficio de su comparecencia.

**II.**

*A. Ley de Compensaciones por Accidentes del Trabajo*

La Carta de Derechos de nuestra Constitución establece que todo trabajador tiene el derecho de estar protegido contra riesgos a su salud en su trabajo o empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. Por ello, y reconociendo el principio de que el riesgo de sufrir accidentes del trabajo es uno de tipo fundamental que necesariamente requiere acción gubernamental, la Asamblea Legislativa por virtud de la Ley Núm. 45 del 18 de abril de 1935, mejor conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* según enmendada, 11 LPRA Sec. 1, *et seq.*, creó la Corporación del Fondo del Seguro del Estado ("CFSE"). A través de esta entidad, se "provee en favor de los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos, un remedio económico y médico para compensar la incapacidad productiva que sobreviene como consecuencia de un accidente o enfermedad ocupacional". Artículo 2 de la Ley Núm. 45, 11 LPRA sec. 2; véase, *Saldaña Torres et at. v. Mun. San Juan,* 198 DPR 934, 942-943 (2017)

Por otra parte, sobre la interpretación de este estatuto, el Artículo 2 de esta legislación establece que, "por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios". 11 LPRA sec. 2.

La pieza legislativa, en su Artículo 3, 11 LPRA sec. 3, enumera los escenarios en los que un obrero o empleado que sufra una lesión o enfermedad ocupacional tendrá derecho a: asistencia

médica, incapacidad transitoria, incapacidad parcial permanente, incapacidad total permanente, o compensación en caso de muerte. 11 LPRA sec. 3

Conforme al esquema de la CFSE, el patrono asume el riesgo de la lesión, entendiéndose que su responsabilidad es absoluta y el empleado que se acoge a la CFSE por un accidente del trabajo no tendrá que probar que hubo negligencia de parte del patrono como causa de la lesión o enfermedad, por lo que es inmaterial que el accidente haya ocurrido a consecuencia de la negligencia del patrono, de un tercero, o hasta del propio empleado. *Guzmán y otros v. ELA,* 156 DPR 693, 729-730 (2002). Es decir, el empleado recibe compensación independientemente de quién sea responsable por el accidente. La legislación evita que el empleado tenga que enfrentar las dificultades de una reclamación civil ante los tribunales, donde tendría que probar el elemento de culpa o negligencia. *Id.* A cambio de esta protección, el patrono asegurado recibe inmunidad contra cualquier reclamación civil en daños y perjuicios que pueda entablar el empleado lesionado en su contra. *Íd. González v. Multiventas*, 165 DPR 873, 881-882 (2005).

### *B.* La jurisdicción apelativa de la Comisión Industrial al amparo de la Ley del Sistema de Compensaciones por Accidentes del Trabajo

La *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, *supra*, creó una entidad denominada como la Comisión Industrial. Por virtud de la referida Ley, la Comisión Industrial:

> [V]elará por el cumplimiento de los objetivos sociales de esta Ley y porque los mismos se administren de manera que respondan a las necesidades de los tiempos. Tendrá, además, funciones de naturaleza "cuasi tutelar" y "cuasi judicial" para la investigación y resolución de todos los casos de accidentes en los cuales la Corporación y el empleado lesionado o sus beneficiarios, no llegasen a un acuerdo con respecto a la compensación y en el ejercicio de sus funciones representará solamente el interés público. 11 LPRA sec. 8

Cónsono con lo anterior, la *Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra,* en su Artículo 3 (a) dispone que:

> la asistencia médica y medicinas que le fueren prescritas, incluyendo servicios de hospital cuando fuere necesario; pero cuando a juicio del Administrador del Fondo del Seguro del Estado tales servicios médicos o de hospital deban descontinuarse, el obrero empleado podrá apelar ante la Comisión Industrial. 11 LPRA sec. 2.

En armonía con lo previamente expuesto, el Tribunal Supremo de Puerto Rico ha aclarado que "como regla general la Comisión Industrial actúa como tribunal apelativo del Fondo del Seguro del Estado a nivel administrativo". *Agosto Serrano v. F.S.E.,* 132 DPR 866, 875 (1993). De igual forma, el más Alto Foro ha resuelto que:

> No obstante, la limitación de la jurisdicción apelativa de la Comisión Industrial no puede operar como camisa de fuerza en un sistema que persigue que se haga justicia rápida y económica, no aprisionada por moldes técnicos. La reserva de autoridad que la Ley hace a favor del Fondo del Seguro del Estado para entender en un asunto en primera instancia no impide que la Comisión, al resolver un caso apelado ante ella, examine en su totalidad sus aspectos y dicte cualquier resolución que proceda y que debió dictar el Administrador y no lo hizo. Rivera Gonzales v. F.S.E., 112 DPR 670, 675 (1982).

### III.

En el presente recurso, la CFSE nos solicita que revisemos el dictamen emitido por la Comisión Industrial el 11 de junio de 2025 y notificada el 13 de junio del mismo año. En esa dirección, en su primer señalamiento de error, la CFSE impugnó la jurisdicción asumida por la Comisión Industrial sobre la condición y diagnóstico de síndrome de túnel carpal izquierdo. Asimismo, como segundo señalamiento de error, el Recurrente argumenta que erró la agencia recurrida al determinar que la condición de síndrome del túnel carpal izquierdo está relacionada al accidente reclamado por la Recurrida ante la CFSE. Por último, en su tercer

señalamiento de error, la CFSE indica que erró la Comisión Industrial al descansar en los hallazgos clínicos de una evaluación realizada más de siete (7) años y seis (6) meses desde la ocurrencia del accidente reclamado por la parte de la Recurrida ante la CFSE. Veamos.

Por estar íntimamente relacionados entre sí, discutiremos los tres (3) señalamientos de error esgrimidos por la Recurrente de manera conjunta. Surge del expediente que la señora Alicea López sufrió una caída el 28 de julio de 2018 en el estacionamiento del Tribunal de Caguas, el cual es su lugar de trabajo. Conforme se desprende del *Informe Patronal*, la Recurrida narró lo siguiente: "[e]staba subiendo la escalera del estacionamiento de empleados del Tribunal de Caguas y **me caí**. Me agarré de la baranda **con la mano derecha** y sufrí una **torcedura de la mano derecha**" (Énfasis nuestro).[33] Además, la Recurrida incluyó la siguiente declaración: "[s]ufrí laceración en el **dedo del pie derecho**. Me **duele el pie hasta la rodilla**. Siento **un dolor en la rodilla**".[34]

Así pues, de la prueba que obra en los autos, surge que la CFSE le brindó el tratamiento, diagnóstico y le realizó una determinación de incapacidad parcial a la Recurrida, conforme a múltiples evaluaciones médicas que ésta recibió. Finalmente, luego de varios trámites, el 4 de enero de 2022, notificada el 19 de enero del mismo año, la CFSE dio de alta a la Recurrida y confirmó que ésta sufrió contusiones de los **dedos del pie derecho**, esguince de la **muñeca derecha** y esguince de la **rodilla derecha**. La Recurrida impugnó esta determinación ante la Comisión Industrial. Dicha agencia refirió a la Recurrida al cirujano general consultor de la Comisión Industrial "para evaluación y recomendaciones sobre tratamiento o mayor incapacidad en cuanto a la condición

---

[33] Véase, SUMAC TA, Entrada1, Exhibit III.
[34] *Véase, SUMAC TA, Entrada1,* Exhibit III.

esguince mano derecha y relación causal y posterior Vista Pública en cuanto a la condición de síndrome de **túnel carpal derecho severo** (Énfasis nuestro)".[35]

Así pues, se desprende del expediente que en la vista pública llevada a cabo el 10 de marzo de 2025, el cirujano general esbozó que evaluó a la señora Alicea López y que al momento de examinarla se percató que tenía la condición de túnel carpal **en ambas manos**. Cónsono con lo anterior, del *Informe* surge que el cirujano concluyó que "tanto el accidente que tuvo en la mano derecha como las labores pudieron ser factores o haber incidido en esta condición".[36] A base de estas declaraciones, y de la prueba ante su consideración, la Comisión Industrial decidió asumir jurisdicción sobre la condición de túnel carpal **bilateral**, condición que incluye tanto la **mano derecha** como la **mano izquierda**.

Ciertamente, la Comisión Industrial es la entidad reconocida por la *Ley del Sistema de Compensaciones por Accidentes del Trabajo, supra,* para revisar determinaciones de la CFSE referente a la asistencia médica. 11 LPRA sec. 3. Asimismo, la referida legislación en su Artículo 2 dispone que "[e]sta Ley por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios". 11 LPRA sec.

No obstante lo anterior, la jurisdicción apelativa de la Comisión Industrial, si bien es amplia, no es absoluta. Nuestra jurisprudencia ha establecido que [l]a reserva de autoridad que la Ley hace a favor del Fondo del Seguro del Estado para entender en

---

[35] Véase, SUMAC TA, Entrada1, Exhibit XVII.
[36] Véase, SUMAC TA, Entrada1, Exhibit XIX.

un asunto en primera instancia no impide que la Comisión, al resolver un caso apelado ante ella, examine en su totalidad sus aspectos y **dicte cualquier resolución que proceda y que debió dictar el Administrador y no lo hizo**" (Énfasis nuestro). *Rivera Gonzalez v. F.S.E.*, 112 DPR 670, 675 (1982).

Nótese que la jurisdicción apelativa de la Comisión Industrial está supeditada a lo que la CFSE **debió** considerar. No hay dudas de que el presente caso **está motivado por una caída en el estacionamiento del Tribunal de Caguas** que sufrió la Recurrida. Tampoco hay controversia en cuanto a que los agravios físicos como consecuencia de la caída esgrimidos por la señora Alicea López fueron una torcedura de la mano derecha, laceración en el dedo del pie derecho y dolor en la rodilla derecha, ya que estos fueron los reclamados en el Informe Patronal.

Sin embargo, del expediente no surge que la Recurrida indicara molestias o dolores en la mano izquierda como consecuencia de la caída. Ello no quiere decir que la señora Alicea López no sufra de la condición de túnel carpal en ambas manos, pero no podemos coincidir con la conclusión de la Comisión Industrial de que dicha condición puede relacionarse al accidente sufrido, ya que en ningún momento se hizo alusión a esta durante el prolongado tratamiento, el cual duró años. Conforme con lo anteriormente esbozado, no hay razón para pensar que la CFSE, **debió dar tratamiento o evaluación** a la mano izquierda cuando nunca se hicieron solicitudes a esos efectos, ni se relacionó la condición al accidente sufrido.

En fin, a la luz de los fundamentos previamente esbozados somos del criterio de que la Comisión Industrial excedió sus facultades al asumir jurisdicción sobre la condición de túnel carpal **en la mano izquierda. En armonía con lo anterior, la Comisión Industrial erró al determinar que dicha condición está**

**relacionada al accidente reclamado por la Recurrida el 28 de julio de 2017, todo ello fundamentado en unos hallazgos clínicos realizado siete (7) años y medio luego de la caída.** En consecuencia, a la luz de estos criterios, determinamos que los tres (3) señalamientos de error esgrimidos por la CFSE, en efecto se cometieron por parte de la agencia recurrida por lo que corresponde revocar el dictamen intitulado *Resolución en Reconsideración* emitido el 11 de agosto de 2025 por la Comisión Industrial.

**IV.**

Por los fundamentos anteriormente expuestos, **revocamos** *el dictamen* recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones